**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

2019 AUG 20  P II: 55

| | | |
|---|---|---|
| ILESE DUNMORE | : | CIVIL ACTION USDC-EDPA |
| Plaintiff | : | REC'D CLERK |
| | : | NO. |
| -vs- | : | 19 CV 3867 |
| | : | |
| TRUSTEES OF THE UNIVERSITY | : | PLAINTIFF REQUESTS |
| OF PENNSYLVANIA | : | TRIAL BY JURY  FILED |
| | : | |
| Defendants | : | AUG 2 0 2019 |

KATE BARKMAN, Clerk
By_____Dep. Clerk

Plaintiff, Elise Dunmore, by and through undersigned counsel hereby files this Civil

Action Complaint against Defendant, Trustees of the University of Pennsylvania ("Defendant")

and upon information and belief avers the following:

## PARTIES

1.      Plaintiff Ilese Dunmore ("Plaintiff" or "Ms. Dunmore")  is an adult individual and

resident of the Commonwealth of Pennsylvania with an address for the purposes of service at

4815 Locust Street, Apartment 107, Philadelphia, Pennsylvania 19139.

2.      Defendant, Trustees of the University of Pennsylvania is a private educational

institution duly existing under the laws of the Commonwealth of Pennsylvania and has an

address for the purposes of service at 3451 Walnut Street, Philadelphia, PA 19104.

3.      At all times material, Defendant, Trustees of the University of Pennsylvania was

licensed to and regularly conducted business as University of Pennsylvania.  Defendant's

primary location in the Commonwealth of Pennsylvania was located at 3451 Walnut Street,

Philadelphia, PA 19104.

4.      At all times material Defendant was Plaintiff's joint and sole employer.

## NATURE OF THE CASE

5.      Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), the Family Medical Leave Act ("FMLA"), the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA") and the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of severe and pervasive discrimination and harassment, retaliation for opposing and reporting said discrimination and harassment, and pursuant to Plaintiff's unlawful termination by her employer due to her disability, sex, gender.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction as this matter involves a question under federal law pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.* ("ADA"), and the Family and Medical Leave Act ("FMLA").

7.      Venue is proper in the Eastern District of Pennsylvania as the events that gave rise to Plaintiff's claim took place in the City of Philadelphia in the Commonwealth of Pennsylvania within the Eastern District of Pennsylvania.

8.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on April 15, 2019 for claims of discrimination and retaliation under the ADA and Title VII.

9.      Plaintiff's claim was dual filed with the Pennsylvania Human Relations Commission and the Philadelphia Commission on Human Relations.  Plaintiff's claims under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance are not yet

ripe for suit, however, Plaintiff will amend her Complaint to add her City and Commonwealth claims at the appropriate time (one year from the time Plaintiff's Charge was dual filed).

10.    The Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights on May 22, 2019.

11.    Plaintiff hereby file the instant Civil Action Complaint within ninety (90) days of receipt of her Dismissal and Notice of Rights.

## **MATERIAL FACTS**

12.    Plaintiff, Ilese Dunmore began her employment for Defendants sometime around March 2016 as a Temporary Laboratory Technician for University of Pennsylvania's University Laboratory Animal Resources ("ULAR") Department.

13.    Sometime around November 2016, Plaintiff, Ilese Dunmore was offered a fulltime position in the ULAR Department as a Fulltime Laboratory Technician.  Plaintiff began as a cagewash technician and excelled in her position.  Plaintiff was given high praise and offered fulltime employment.

14.    Plaintiff worked every weekend for approximately nine (9) months between November 2016 and August 2017.

15.    During Plaintiff's employment, Plaintiff was subjected to severe and pervasive discrimination and harassment based upon Plaintiff's sex and gender.

16.    During Plaintiff's employment, Plaintiff was subjected to severe and pervasive discrimination and harassment due to Plaintiff's disability.

17.    Plaintiff was subjected to a hostile work environment based upon her sex, gender, race, and color and reported the hostile work environment, including the bullying, harassment,

intolerable treatment, verbal-abuse, name-calling, work sabotage, and discriminatory animus to the University of Pennsylvania Crisis Center located at 800 Spruce Street, Philadelphia, PA 19107.

18.    Plaintiff was subjected to a hostile work environment based upon her sex, gender, race, and color and reported the hostile work environment, including the bullying, harassment, intolerable treatment, verbal-abuse, name-calling, work sabotage, and discriminatory animus to the Director of Veterinary Hospital University Of Pennsylvania ("VHUP"), Paul Smiley.

19.    Plaintiff made her first report to Paul Smiley sometime around August 31, 2017 at approximately 10:00 A.M.

20.    Plaintiff met with Paul Smiley for approximately one (1) hour at Paul Smiley's office which is located at the VHUP located at 3900 Spruce St, Philadelphia, PA 19104. Plaintiff explained everything including the manner in which Plaintiff was subjected to bullying, work-sabotage, harassment and hostile work environment.

21.    The hostile work environment, including the bullying, harassment, intolerable treatment, verbal-abuse, name-calling, work sabotage, and discriminatory animus continued and got worse subject to Plaintiff's reports of discrimination and harassment in the workplace.

22.    Plaintiff continued to be subjected to extreme, hostile, discrimination and harassment until Plaintiff had a mental breakdown and was admitted into Belmont Hospital located at City Line Avenue.  Plaintiff remained admitted to Belmont Hospital from sometime around October 3, 2017 until January 22, 2018.

23.    Plaintiff remained at Belmont Hospital for approximately four (4) weeks and then Plaintiff was referred to an intensive outpatient program that consistent of constant monitoring four (4) days per week, Monday through Thursday from 10:00 A.M. until 2:00 P.M.

24.    The outpatient program Plaintiff was referred to by Belmont Hospital was called the Light Program, located at 1420 Walnut Street, Suite 500, Philadelphia, PA 19102.  While in the Light Program, Plaintiff was under the care of Dr. Edwyn Camiel, M.D.

25.    The reason Plaintiff was admitted to Belmont Hospital and the Light Program was directly, intentionally, and willfully caused by the discrimination and harassment to which Plaintiff was subjected by Defendants and Defendants' employees including but not limited to Edward Zawinski, Hellisha Macclemore, Odelle Jones, Susan Curran, Renee Rawls, Emanuel Oliver, Ufuoma Pela, and Dayshana Duncan.

26.    During Plaintiff's employment the word "nigger" was used constantly to refer to African American employees including Plaintiff, Elise Dunmore.

27.    Plaintiff Elise Dunmore was subjected to constantly ridicule and verbal assaults by Hellisha Macclemore.  Hellisha Macclemore accused Plaintiff of "selling her pussy" to management.

28.    Hellisha Macclemore informed Plaintiff that the only reason Plaintiff was hired and promoted to a fulltime position is because "you must be selling that pussy."

29.    Hellisha Macclemore accused Plaintiff of proving "special favors to management in order to maintain her employment.

30.    Hellisha Macclemore made discriminatory comments toward Plaintiff on a daily basis. The discrimination and harassment to which Plaintiff was subjected was severe and pervasive and created a hostile work environment for Plaintiff, Ilese Dunmore.

31.    Hellisha Macclemore harassed and discriminated against Plaintiff to such an extent that Hellisha Macclemore earned the name "the Hill Pavilion Bully." The Hill Pavilion was the building where Plaintiff worked every day.

32.    Hellisha Macclemore's discrimination and harassment of Plaintiff, Ilese Dunmore was not relegated to verbal abuse only. Hellisha Macclemore also sabotaged Plaintiff's work on a daily basis in a coordinated effort aimed at making Plaintiff's work environment so abusive, intolerable  hostile, and odious that no reasonable person would have been expected to continue working under such conditions and such that Plaintiff was subjected to a hostile work environment.

33.    Plaintiff's primary duties included cleaning the laboratory-rooms every Wednesday with Clidox which is a disinfecting agent. Plaintiff would complete her cleaning duties and Defendants, including Hellisha Macclemore and other coworkers including Dayshana (last name unknown) and George Irons would work behind Plaintiff and mess the rooms up. Plaintiff was called into her supervisor's office after cleaning on multiple occasions and accused of not finishing her cleaning duties. Upon observing the rooms Plaintiff had previously cleaned dirty bedding was strewn on the floor and the rooms were torn apart. Defendants, including Hellisha Macclemore and others including Dayshana Duncan and George Irons threw the Sharp containers on the floor of rooms on the day that Plaintiff, Elise Dunmore was scheduled to clean. A Sharp container is a red biohazard container that gets filled with used-needles. Accordingly,

Plaintiff would re-enter a room that she previously cleaned and needles and other trash was strewn across the floor.

34.    Defendants sabotaged Plaintiff's work every day in a coordinated effort to discriminate and harassment Plaintiff based upon Plaintiff's sex, gender, race and color. Defendants discrimination and harassment continued until Plaintiff suffered a mental breakdown and was admitted to Belmont Hospital.

35.    Plaintiff remained in inpatient treatment and then outpatient treatment from October 2017 through January 2018. January 2018, Plaintiff returned to work after a leave that Defendants designated as leave pursuant to the Family Medical Leave Act ("FMLA").

36.    Defendants unlawfully and incorrectly designated Plaintiff's medical leave between October 2017 through January 2018 as FMLA leave. Plaintiff's medical condition was a work related injury. Plaintiff was caused to be admitted to the hospital due to the ongoing, continuous, severe and pervasive discrimination and harassment to which Plaintiff was subjected by Defendants.

37.    Plaintiff was forced to be admitted to the hospital and Defendants forced Plaintiff to rest upon her rights under the FMLA. Accordingly, when Plaintiff required FMLA leave in March 2018, Defendants denied and refused to approve Plaintiff lawful request for FMLA leave.

38.    Defendants interfered with Plaintiff FMLA rights by incorrectly calculating Plaintiff's FMLA time. Plaintiff requested FMLA leave and was denied her FMLA. Defendants incorrectly concluded that Plaintiff was beyond the maximum number of weeks provided by the FMLA.

39.     Plaintiff continued to have FMLA time available to her.  The way in which Defendants calculated Plaintiff's FMLA time caused Defendants to unlawfully deny Plaintiff's request for FMLA.  Accordingly, Defendants interfered with Plaintiff's FMLA right.

40.     Defendants retaliated against Plaintiff pursuant to Plaintiff's lawful utilization of her FMLA rights.  Defendants disciplined Plaintiff for lateness and absences on days when Plaintiff was later and/or absent pursuant to Plaintiff's FMLA rights.  Plaintiff lawfully utilized the FMLA and was subsequently subjected to discipline and ridicule.

41.     Plaintiff requested reasonable accommodations and was denied her requests for reasonable accommodations.  Plaintiff requested that she be permitted to change her schedule and take the time Plaintiff required to work through the issues related to Plaintiff's disability.

42.     Defendants refused to provide Plaintiff with the reasonable accommodations Plaintiff requested.  Defendants refused to engage Plaintiff in an interactive process to discuss and consider Plaintiff requests for reasonable accommodations.

43.     Upon Plaintiff's return to her employment for Defendants in January 2018, Plaintiff was once again subjected to a severe and pervasive atmosphere of discrimination, harassment abuse, intolerable treatment, sabotage and ridicule.  Defendants now included Plaintiff's disability in their discrimination and harassment of Plaintiff.

44.     Defendants called Plaintiff "crazy."  Defendants started rumors about Plaintiff and said that Plaintiff "practiced voodoo."  Defendants constantly subjected Plaintiff to discrimination and harassment based upon Plaintiff's disability.  Defendants said that Plaintiff was "nuts."  Defendants said that Plaintiff

45.     When Plaintiff returned to her employment for Defendants in January 2018, all of Plaintiff's coworkers were aware that Plaintiff left work subject to a mental breakdown. Defendants discussed Plaintiff's medical leave and mental capacity every day like it was their entertainment. This subjected Plaintiff to constant abuse and ridicule because of Plaintiff's disability.

46.     Defendants said that Plaintiff was HIV positive. Defendants including Emmanuel Oliver laughed at Plaintiff in the breakroom because Plaintiff was HIV positive. Defendants said, "that is why you were gone for so long." At no time was Plaintiff HIV positive.

47.     Defendants forced Plaintiff to work alone. Plaintiff's similarly situated coworkers did not work alone as it was customary for employees of Defendants to work in teams.

48.     When Plaintiff returned to work in January 2018, the hostile work environment continued and Plaintiff was subjected to severe and pervasive discrimination and harassment in the workplace. Defendants continued to sabotage Plaintiff's work as sport. Defendants continued to make abusive, discriminatory comments to Plaintiff based upon Plaintiff's disability. Defendants called Plaintiff "the crazy girl." Defendants asked Plaintiff, "so was it in the nut house?"

49.     Plaintiff continued to require time off for medical leave beginning February 1, 2018; however due to Defendants willful miscalculation of Plaintiff's FMLA time, which was calculated in such a way as to deny and reduce Plaintiff's right to twelve weeks of FMLA, Plaintiff was denied her FMLA rights. Defendants interfered with Plaintiff's FMLA rights. Defendants retaliated against Plaintiff due to Plaintiff's use and request to utilize her FMLA rights.

50.     Defendants terminated Plaintiff subject to the severe and pervasive discrimination and harassment to which Plaintiff was subjected by Defendants due to Plaintiff's sex, gender, race, color and disability.  Defendants claim that Plaintiff was terminated because of "falsifying her time records."  At no time did Plaintiff falsify her time records.  Defendants do not have a legitimate nondiscriminatory reason for terminating Plaintiff's employment any rationale provided by Defendants is merely pretext to disguise Plaintiff's unlawful termination.

51.     Plaintiff was terminated pursuant to Plaintiff's ongoing opposition to and reporting of the discrimination, harassment, and hostile work environment to which Plaintiff was subjected by Defendants.

52.     Plaintiff's termination was the result of a campaign of discrimination and harassment and hostile work environment to which Plaintiff was subjected by Defendants.   The discrimination and harassment was based upon Plaintiff's sex, gender, race, color and disability and in retaliation for Plaintiff's opposition to and reporting of the severe and pervasive discrimination and harassment.

53.     Notwithstanding, Defendants failed to accommodate Plaintiff. Furthermore, Defendants did not accommodate Plaintiff with the requested Ergonomic Office Chair, Key Board and Vari desk until on August 2017.  By this point Defendants' decision to terminate Plaintiff had already been made.

54.     Defendants specifically lied to Plaintiff about ordering the equipment Plaintiff requested.  Defendants informed Plaintiff that they ordered the equipment as a reasonable accommodation however, Defendants refused to do so.

55.    About one week later, Plaintiff contacted Defendant Nancy Defusco and informed Defendant, Nancy Defusco that the key board and mouse provided was still uncomfortable and causing the Edema to worsen. Defendant, Nancy Defusco refused to consider Plaintiff's report and disregarded Plaintiff entirely.

56.    Shortly thereafter, around August 23, 2017, Defendants unlawfully and wrongfully terminated Plaintiff due to Defendants' discrimination, and retaliation.

57.    At all times Defendants failed to properly investigate or take any corrective action in response to Plaintiff's complaints and reports.

58.    Defendants wrongfully terminated Plaintiff because of her disability and her opposition to the unlawful conduct of Defendants' employees relating to her request for accommodations. Defendants failed to engage Plaintiff in an interactive process to discuss Plaintiff's requests for reasonable accommodations.

59.    When Plaintiff began her employment on March 26, 2016, she received two weeks of training with Emmanuel Oliver. The trainers were also Behiya Stone and Ms. Gonzalez.

60.    Emmanuel Oliver and Plaintiff first began working as Cage Wash Technicians. After our 90 day period of probation Emmanuel Oliver was offered fulltime and Plaintiff was still considered part-time/a floater.

61.    Plaintiff worked every weekend for eight months.

62.    During a staff meeting Plaintiff was informed that a 10 percent increase would be applicable to all staff that worked on weekends; however, Plaintiff was never compensated for working the weekends.

63.    Emmanuel was offered a fulltime position months before Plaintiff, Else Dunmore. Plaintiff, Ilese Dunmore was not paid the 10 percent increase for working weekends.

64.    During this time a transition in Management was underway.  Robert Roberson and Arnetta Crawford were under investigation for discrimination and favoritism.

65.    There were several times when Arnetta Crawford and Helisha Macclemore sabotaged Plaintiff's work to discriminate and harass Plaintiff.   Plaintiff was forced to do the same work over again every time her work was sabotaged.   Arnetta Crawford and Helisha Macclemore pushed clean items to the dirty side and contaminated the clean items in an effort to discriminate and harass Plaintiff by sabotaging her work.

66.    Hellisha Macclemore and Arnetta Crawford discriminated, harassed and bullied Plaintiff and subjected Plaintiff to severe and pervasive discrimination and harassment. Plaintiff's work environment was toxic, intolerable, onerous and abusive.

67.    Hellisha Macclemore and Arnetta Crawford discriminated, harassed Plaintiff by placing fecal matter in areas where Plaintiff had just cleaned.

68.    Plaintiff's coworker, Helisha Macclemore learned that Plaintiff drove a BMW and said, "you must be selling pussy." This highly embarrassing comment was made in the breakroom in front of Plaintiff's coworkers and colleagues.

69.    Arnetta Crawford and Helisha Macclemore harassed and discriminated against Plaintiff by making disparaging and defaming comments about Plaintiff to coworkers and colleagues by suggesting that Plaintiff was engaged in sexual relationships with the manager Robert Robinson.  They made comments that Plaintiff was "taking special opportunities" to move forward in the workplace.

70.     Sometime around November 2016, Plaintiff was offered a fulltime as an Animal Lab Technician.  Accordingly, Plaintiff no longer worked weekends.

71.     Plaintiff requested training, however, Defendants refused to train and help Plaintiff learn the requirements of the new position.

72.     By the end of 2016, Defendants including Dayshana Duncan and Helisha Macclemore continued to sabotage Plaintiff's work in an effort to discriminate and harassment Plaintiff.

73.     Sometime around 2017, Robert Clifford and Shanda Brown discontinued their employment for Defendants due to the severe and pervasive hostile work environment.

74.     Sometime around 2017 Dayshana Duncan and Helisha Macclemore removed log sheets from assigned doors and removed pup cards from animals which had babies.  Dayshana Duncan and Helisha Macclemore sabotaged Plaintiff's work in order to get Plaintiff written up and disciplined.  Plaintiff had to do the same work over again to fix the sabotaged work.

75.     Plaintiff contacted and reported the issues of discrimination and harassment to Human Resources.  Plaintiff also spoke to management and thoroughly explained and reported the discrimination and harassment.

76.     Plaintiff spoke with and reported the discrimination and harassment to Ufumoa Pela who worked in the human resources department.  Ufumoa Pela promised to investigate and take prompt corrective action, however no meaningful investigation was performed and the discrimination and harassment continued.

77.     Sometime in 2017 Rob Clifford and Shonda Brown discontinued their employment due to the severe and pervasive hostile work environment.

78.    Plaintiff's performance reviews were always positive and Plaintiff was highly qualified and performed with excellence.

79.    Plaintiff also received praise from management and received an increase in her compensation sometime around July 2017.

80.    Plaintiff also received a recommendation letter from Renee Rawls.

81.    Plaintiff was written up and disciplined for issues related to her disability and association with a disabled person.  Plaintiff requested time off and was written up and disciplined.  Defendants discriminated against Plaintiff due to Plaintiff's disability and close association with a disabled person.

82.    Plaintiff spoke with Susan Tracy who works in the human resources department. Plaintiff requested FMLA paperwork.  Defendants improperly asked Plaintiff to provide Plaintiff's daughter's full medical history before FMLA was approved.  Defendants retaliated against Plaintiff subject to Plaintiff's FMLA request.  Plaintiff was disciplined while on FMLA.

83.    Plaintiff was written up and disciplined by Zack Zwenski after Plaintiff was approved and/or requested FMLA leave.  Zack Zwenski harassed, discriminated against, and retaliated against Plaintiff pursuant to Plaintiff's protected class, reports of harassment and discrimination and pursuant to Plaintiff's request for FMLA leave.

84.    Plaintiff was subjected to extreme stress and constant harassment and suffered from emotional distress and physical manifestations.  Plaintiff's weight dropped to ninety-eight (98) pounds.

85.     Plaintiff was harassed and discriminated against during her employment for Defendants. Defendants gave Plaintiff unfair job assignments and provide impossible deadlines in an effort to make Plaintiff's work environment hostile, abusive, and intolerable.

86.     Plaintiff was given assignments which were normally undertakes by two (2) to three (3) employees. Plaintiff was left alone to complete these jobs on her own.

87.     Plaintiff met with Paul Smiley August 31, 2017. During this meeting Plaintiff reported the ongoing discrimination and harassment. No investigation was performed. No corrective action was taken.

88.     On multiple occasions Helisha Macclemore sabotaged equipment Plaintiff was using and unscrewed bolts in the trucks. This caused clean cages to fall on the floor. Plaintiff was ordered to clean the mess.

89.     Defendants altered timesheet in an effort to harass Plaintiff.

90.     Zack Zwenski continued to sabotage Plaintiff's work, stating Plaintiff was placing Nestlets in the machines to force them to stop working. This occurred on days Plaintiff was not responsible for catching cages.

91.     Plaintiff's requests for assistance were ignored.

92.     Due to the severe and pervasive discrimination and harassment Plaintiff could not sleep and had sever panic attacks. Plaintiff believed she was having a heart attack and went to the emergency room.

93.     Plaintiff opposed and reported the severe and pervasive discrimination and harassment in the workplace, however no investigation resulted and no corrective action was initiated. Accordingly the discrimination and harassment continued unabated.

94.    Defendants interfered with Plaintiff's rights under the FMLA by refusing to provide Plaintiff with FMLA paperwork and/or approval.   Plaintiff received FMLA approval in October 2017.

95.    Plaintiff's doctors recommended that Plaintiff not return to work due to ongoing mental health and completed Plaintiff's FMLA certification.

96.    Upon return from FMLA, Plaintiff's new supervisor was Linda Cocco.

97.    Plaintiff was ridiculed and subjected to discrimination and harassment with conduct and comments such as being called "crazy."

98.    Plaintiff was accused of having AIDS by George Irons.

99.    Hallicia accused Plaintiff of "practiced Voodoo" in front of coworkers in the break room.  Plaintiff was embossed and offended by the discrimination and harassment which occurred in front of Plaintiff's coworkers.

100.    Plaintiff was accused of being pregnant and Plaintiff's supervisor, Linda, asked Plaintiff if she was pregnant.

101.    Plaintiff was accused of attempting suicide by Craig Barkley.

102.    Plaintiff was wrongfully terminated on August 1, 2018.  The stated reason for Plaintiff's termination was pretext.  Plaintiff was terminated pursuant to discrimination and harassment and for opposing and reporting said discrimination and harassment in the workplace.

103.    Linda Cocco presented Plaintiff with termination paperwork.

104.    The paperwork described a false and misleading account of Plaintiff's last days of employment.

105.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

106.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress, including but not limited to physical manifestations of her emotional distress.

107.    The discrimination and harassment was severe and pervasive and Plaintiff was subjected to daily ridicule during her employment for Defendants.  Plaintiff was therefore subjected to a hostile work environment during her employment for Defendants.

108.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer anxiety, depression, panic attacks, and sleep disturbance.

109.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendants

110.    Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

111.    Upon information and belief the discrimination and retaliation will continue after the date of this Complaint and Plaintiff hereby makes a claim for all continuing future harassment and retaliation.

112.    Plaintiff further claims actual discharge as a result of the retaliation and harassment.

113.    Plaintiff claims injuries including aggravation to any preexisting conditions caused by Defendants' decision to deny Plaintiff reasonable accommodations and due to Defendants discrimination, harassment and retaliation of Plaintiff.

114.    Defendants created a hostile work environment for Plaintiff due to Plaintiff's disabilities. Defendants targeted Plaintiff due to Plaintiff's disability and in retaliation of Plaintiff's opposition to Defendants' unlawful conduct. Defendants kept close watch of Plaintiff with the intent of coming up with a pretextual reason for effecting Plaintiff's termination.

115.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

### FIRST CAUSE OF ACTION
### DISCRIMINATION UNDER
### AMERICANS WITH DISABILITIES ACT
### (Against Corporate Defendants only)

116.    Plaintiff, Ilese Dunmore, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-fifteen (115) as fully as if they were set forth at length.

117.    Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

118.    Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities.

119.    From the time her medical condition began to the day of her termination, Plaintiff was capable of performing the duties and job requirements of her position.

120.    Plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2).

121.    From the time her medical condition presented to the day of her termination, Plaintiff attempted to engage Defendants in an interactive process to discuss reasonable accommodations.

122.    During such time, Defendant continually, intentionally, and in a discriminatory manner refused to consider Plaintiff as an employee with a legitimate disability that required Defendants to provide Plaintiff with rights afforded by state and federal disability discrimination laws.

123.    At all times Plaintiff was able to fulfill the job requirements of her employment and work without restriction.  Defendants manufactured discriminatory conditions to Plaintiff's employment that did not exists for any other employee.

124.    Defendant's perception of Plaintiff's disability was entirely unfounded and unsubstantiated.

125.    Defendants refused to engage Plaintiff in an interactive process to discuss reasonable accommodations requested.

126.    Defendant's August 2017 termination of Plaintiff was not based on any medical justification or performance justification and was discriminatory as to Plaintiff.

127.    Defendant terminated Plaintiff because of her disability.

128.    Such adverse employment actions by Defendant were in violation of the ADA.

129.    Following Defendant's termination of Plaintiff, Plaintiff was replaced by a non-disabled individual.

130.    As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

131.    Plaintiff also claims unlawful retaliation under the ADA for her opposition to Defendant's unlawful employment practice.

132.    Plaintiff makes claims for all damages available under the ADA.

**SECOND CAUSE OF ACTION**
**RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT**

133.    Plaintiff, Ilese Dunmore, hereby incorporates all allegations contained in paragraphs one (1) through one-hundred-thirty-two (132) as fully as if they were set forth at length.

134.    SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

135.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

136.    Defendants retaliated against Plaintiff when Plaintiff opposed Defendants discriminatory animus to which Plaintiff was subjected during her employment.

## THIRD CAUSE OF ACTION
## <u>INTERFERENCE WITH FAMILY MEDICAL LEAVE ACT</u>

137    Plaintiff, Ilese Dunmore, hereby incorporates all allegations contained in

paragraphs one (1) through one-hundred-thirty-six (136) as fully as if they were set forth at

length.

138.    §2612 of the FMLA states in pertinent part:

(a) In General
    (1) Entitlement to leave
        Subject to section 2613 of this title, an eligible employee shall be entitled to a
        total of 12 work weeks of leave during any 12-month period of one or more of
        the following:
            (A) Because of the birth of son or daughter of the employee and in order
            to care for such son or daughter.
            (B) Because of the placement of a song or daughter with the employee for
            adoption or foster care.
            (C) In order to care for the spouse, or a son, daughter, or parent, of the
            employee, if such spouse, son, daughter, or parent has a serious health
            condition.
            (D) Because of a serious health condition that makes the employee unable
            to perform the functions of the position of such employee.

139.    Defendants violated Plaintiff's rights under the FMLA by interfering with

Plaintiff's leave by continuously misleading Plaintiff and by giving her incorrect information

about her leave eligibility.  Defendants also approved Plaintiff's leave under the FMLA and then

terminated her employment during her FMLA leave.

140.    Defendants made various oral and written representations and should be estopped

from asserting that Plaintiff did not qualify for FMLA leave.

141.    Plaintiff would have modified her conduct and not have sought continuous and/or

intermittent leave, if she had known that her employer would count such leave as adverse

incidents, and thus, detrimentally relied on employer's representations.

142.    Defendants, by and through its managers, officials, and employees, by acts or

representations intentionally or through culpable negligence included Plaintiff to believe that certain facts existed regarding her right to FMLA leave or leave that would not be counted against her and she justifiably relied and acted upon such belief, so that she will be prejudiced if the Defendant is permitted to deny the existence of such facts.

143.    Defendants violated Plaintiff's rights by failing to provide her with appropriate leave thereunder.

144.    § 2615 of the Act states as follows: Prohibited acts

(a) Interference with rights
    (1) Exercise of rights:
    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
    (2) Discrimination:
    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter

145.    Defendants interfered with Plaintiff's rights under the above section and discriminated against Plaintiff and discharged Plaintiff from her employment for opposing Defendants' unlawful employment practices and attempting to exercise her rights.

**FORTH CAUSE OF ACTION**
**DISCRIMINATION UNDER TITLE VII**

146.    Plaintiff, Ilese Dunmore, hereby incorporates all allegations contained in paragraphs one (1) through one-forty-five (145) as fully as if they were set forth at length.

147.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

148.    SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer -
(1) to fail or refuse to hire or to discharge any individual, or otherwise to
discriminate against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such individual's race, color,
religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in
any way which would deprive or tend to deprive any individual of employment
opportunities or otherwise adversely affect his status as an employee, because of
such individual's race, color, religion, sex, or national origin.

149.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C.
§2000e et seq., by discriminating against Plaintiff because of her sex and gender.

## FIFTHCAUSE OF ACTION
## RETALIATION UNDER TITLE VII

150.    Plaintiff, Ilese Dunmore, hereby incorporates all allegations contained in
paragraphs one (1) through one-forty-nine (149) as fully as if they were set forth at length.

151.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that
it shall be an unlawful employment practice for an employer: "(1) to...discriminate against any of his
employees...because [s]he has opposed any practice made an unlawful employment practice by this
subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an
investigation, proceeding, or hearing under this subchapter."

152.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et
seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment
because of his opposition to and reporting of the unlawful employment practices of Defendants.  Defendants
took action against Plaintiff due to Plaintiff's opposition to Defendants' discrimination and harassment of
Plaintiff.  Defendants also took action against Plaintiff due to Plaintiff's involvement in a civil action lawsuit
where Defendant, Philadelphia Housing Authority was a named Defendant.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

DEREK SMITH LAW GROUP, PLLC
Attorneys for Plaintiffs

By: _____
Seth D. Carson, Esquire
1835 Market St., Ste. 2950
Philadelphia, Pennsylvania 19103
Phone: (215) 391-4790
Email: Seth@DerekSmithLaw.com

Dated: August 20, 2019

JS 44 (Rev. 02/19)    JCW    **CIVIL COVER SHEET**    19-cv-3867

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
ILESE DUNMORE

**DEFENDANTS**
TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Seth Carson - Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950, Philadelphia PA 19103

Attorneys *(If Known)*
Todd Alan Ewan, Esquire
150 N. Radnor Chester Road, Suite C300, Radnor, Pennsylvania 19087

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☒ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____
Brief description of cause:
_____

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $ _____    CHECK YES only if demanded in complaint:    JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

AUG 20 2019

DATE    August 20, 2019    SIGNATURE OF ATTORNEY OF RECORD    _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JCJ

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

19cv 3867

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 4815 Locust Street, Apartment 107, Philadelphia, Pennsylvania 19139

Address of Defendant: 3451 Walnut Street, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: University of Pennsylvnia in Philadelphia, Pennsylvania

---

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE August 20, 2019    _[signature]_    319886
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

A.    *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☒ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
        *(Please specify)* _____

B.    *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
        *(Please specify)* _____

---

## ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Seth D Carson , counsel of record or pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE August 20, 2019    _[signature]_    319886
                        *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

AUG 20 2019

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

Civ 609 (5/2018)

JCJ

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| Ilese Dunmore | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| Trustees of the University of Pennsylvania | : | NO. 19CV 3867 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| August 20, 2019 | | Plaintiff |
|---|---|---|
| Date | Attorney-at-law | Attorney for |
| 215.391.4790 | 215.893.5288 | seth@dereksmithlaw.com |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

AUG 20 2019